IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

UNITED STATES OF AMERICA                                                      PLAINTIFF

v.                              Case No. 1:13-cr-10007-003

CHEVIS D. JOHNSON                                                             DEFENDANT

## ORDER

Before the Court is Defendant Chevis D. Johnson's Motion for Compassionate Release to Home Confinement Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (ECF No. 342).  The Court finds that no response is necessary and that the matter is ripe for consideration.

### I.  BACKGROUND

The Court sentenced Defendant to 171 months and 17 days of imprisonment, 3 years of supervised release, and a $100 special assessment.  On June 10, 2020, Defendant filed the instant *pro se* motion, stating that he is incarcerated in FMC Fort Worth, where he and other inmates are unable to practice social distancing and are at risk of contracting COVID-19.  To protect his health, Defendant asks the Court to grant him a "compassionate release to home confinement." Construing the instant motion liberally, the Court finds that Defendant alternatively seeks two distinct forms of relief:  (1) a "compassionate release" sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A); and (2) placement on home confinement pursuant to 18 U.S.C. § 3624(c).

### II.  DISCUSSION

As stated above, Defendant alternatively seeks a compassionate release or placement on home confinement.  The Court cannot grant either request for the following reasons.

**A. Compassionate Release**

"A court's ability to modify a sentence after it has been imposed is extremely limited."

United *States v. Schmitt*, No. CR12-4076-LTS, 2020 WL 96904, at *2 (N.D. Iowa Jan. 8, 2020). One way a court may modify a sentence is through "compassionate release," as outlined in 18 U.S.C. § 3582(c)(1)(A), which was recently modified by section 603 of the First Step Act of 2018 (the "FSA"). Pub. L. No. 115-391, 132 Stat. 5194, at 5239. "Compassionate release is the term used by the relevant regulations to describe early release from a term of imprisonment." *Sims v. Norwood*, No. CV 08-0377-RGK MLG, 2008 WL 1960127, at *1 (C.D. Cal. May 2, 2008); *see also United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *12 (E.D. Pa. Apr. 1, 2020) (granting compassionate release and reducing the defendant's prison sentence to time served).

Defendant bears the burden of showing that compassionate release is appropriate. *United States v. Mitchell*, No. 5:10-cr-50067-001, 2020 WL 544703, at *1 (W.D. Ark. Feb. 3, 2020) (citing *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016)). A compassionate release may be granted when: (1) the requested sentence reduction is warranted due to "extraordinary and compelling reasons;" (2) the sentencing factors set forth in 18 U.S.C. § 3553(a) support a reduction "to the extent that they are applicable;" and (3) that a reduction would be consistent with any applicable policy statements issued by the Sentencing Commission. 18 U.S.C. 3582(c)(1)(A)(i).

As a threshold matter, Defendant must satisfy certain procedural requirements before filing a compassionate-release motion. "Before the enactment of the FSA, a motion for compassionate release had to be filed by the Director of the [BOP] and an inmate could not unilaterally file one with the court." *Mitchell*, 2020 WL 544703, at *1. However, the FSA now permits an inmate to seek a compassionate release directly from the sentencing court "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

defendant's facility." 18 U.S.C. § 3582(c)(1)(A)(i). Defendant bears the burden of showing that he exhausted his administrative rights with the BOP before filing a compassionate-release motion. *United States v. Davis*, No. 2:15-CR-20067-SHM, 2019 WL 6898676, at *1 (W.D. Tenn. Dec. 18, 2019).

The BOP has outlined the administrative exhaustion process in its Program Statement No. 5050.50. In short, a request for compassionate release must first be submitted to the warden of the BOP facility the defendant is housed in. 28 C.F.R. § 571.61(a). If the warden approves the request, it is sent to the BOP's general counsel for approval. 28 C.F.R. § 571.62(A)(1). If the general counsel approves the request, it is sent to the BOP's director for a final decision. 28 C.F.R. § 571.62(A)(2). If the director approves, he or she will ask the United States Attorney in the applicable judicial district to file a compassionate-release motion on the BOP's behalf. 28 C.F.R. § 571.62(A)(3).

If the warden does not respond to the request, the defendant's administrative remedies are deemed exhausted after thirty days. 18 U.S.C. § 3582(c)(1)(A)(i). If the warden denies the compassionate-release request, the defendant must appeal the decision pursuant to the BOP's Administrative Remedy Program. 28 C.F.R. § 571.63(a). If the request is denied by the BOP's general counsel or director, that decision is considered a final administrative decision and the defendant's administrative remedies are exhausted at that time. 28 C.F.R. § 571.63(b-c).

Defendant appears to concede that he has not exhausted his administrative remedies within the BOP. He states that in April 2020, he submitted a written request for "compassionate release to home confinement" to his case manager in the San Antonio Unit of FMC Fort Worth. However, he does not know the status of that request because, shortly afterwards, he was transferred to the Fort Worth Unit of FMC Fort Worth to be housed with the other COVID-19 negative prisoners in

that facility.  Defendant does not state or provide evidence that the warden of FMC Fort Worth received his written compassionate-release request or that he or she issued a decision on it.

Defendant also states that, a week after his transfer, he asked a staff member about obtaining a compassionate release and was told to file a BP-8 form because the staff member did not know how to process the request.[1]  On April 14, 2020, Defendant submitted a written informal resolution form requesting immediate release to home confinement.  This request was denied on April 15, 2020, on the basis that Defendant was not eligible for home confinement.  Defendant does not state or provide evidence that he continued the BOP's grievance procedure after that denial.[2]

Defendant argues that FMC Fort Worth's staff lack knowledge and experience in dealing with compassionate release requests, particularly in light of the COVID-19 pandemic.  He argues further that FMC Fort Worth has one of the highest COVID-19 death rates of all BOP facilities.  Accordingly, he asks the Court to waive his requirement to exhaust his administrative remedies because he contends that he will inevitably contract COVID-19 if he is required to exhaust his remedies, thereby making it futile for him to continue the exhaustion process.  After careful consideration, the Court concludes that it cannot do so.

The Court can only consider a motion for compassionate release "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the

---

[1] A BP-8 form, also known as an informal complaint, is the first step of the BOP's grievance policy, and is followed by a formal written grievance and two separate appeals if the prisoner is unsatisfied with the response received at each step.  *See* Corrections Information Council, *FBOP – Administrative Remedy Program*, available at https://cic.dc.gov/sites/default/files/dc/sites/cic/page_content/attachments/BOP%20Administrative%20Remedies%2011.15.17%20REVISED.pdf (last accessed June 15, 2020).

[2] In light of the following discussion, the Court expresses no opinion as to whether the BOP's grievance procedure is the proper avenue to request a compassionate release and to fully exhaust administrative remedies as required by the FSA.

receipt of such a request by the warden of the defendant's facility." 19 U.S.C. § 3582(c)(1)(A). Based on that language, Congress, in enacting the FSA, has statutorily imposed exhaustion requirements before a defendant can petition a court for compassionate release. *See United States v. Gross*, No. 15-769, 2020 WL 1673244, at *2 (S.D.N.Y. Apr. 6, 2020) ("[T]he statute includes an exhaustion requirement in recognition of the fact that [the BOP] is frequently in the best position to assess, at least in the first instance, a defendant's conditions, the risk presented to the public by his release, and the adequacy of a release plan.").

The FSA's explicit statutory exhaustion requirement is not susceptible to judicially created exceptions. "No doubt, judge-made exhaustion doctrines . . . remain amenable to judge-made exceptions. . . . But a statutory exhaustion provision stands on a different footing. There, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to." *Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1857 (2016). "For that reason, mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion." *Id.*; *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[W]e stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"). In other words, the Court cannot excuse a failure to exhaust administrative remedies before filing a compassionate-release motion, even in the face of the COVID-19 pandemic. *See United States v. Raia*, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) (concluding that failure to exhaust administrative remedies for request for compassionate release based on COVID-19 pandemic presented "a glaring roadblock foreclosing compassionate release at this point" and that "strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance"); *United States v. Smith*, No. CR07-3038-LTS, 2020 WL 2844222, at *5 (N.D. Iowa June 1, 2020) (collecting cases); *United States v. Epstein*, No. CR 14-

5

287 (FLW), 2020 WL 1808616, at *4 (D.N.J. Apr. 9, 2020); (collecting cases and denying request for compassionate release after concluding that the court could not waive a failure to exhaust administrative remedies); *United States v. Albertson*, No. 1:16-cr-00250-TWPMJD, 2020 WL 1815853, at *2 (S.D. Ind. Apr. 8, 2020) (denying request for compassionate release based on COVID-19 after concluding the movant failed to establish that the court could waive his failure to exhaust); *United States v. Holden*, No. 3:13-CR-00444-BR, 2020 WL 1673440, at *5-10 (D. Or. Apr. 6, 2020) (collecting cases and denying request for compassionate release after concluding that the court could not waive a failure to exhaust administrative remedies); *United States v. Johnson*, No. RDC-14-0441, 2020 WL 1663360, at *3-6 (D. Md. Apr. 3, 2020) (denying request for compassionate release based on COVID-19 pandemic; concluding that section 3582(c)(1)(A)'s exhaustion requirement is jurisdictional and, alternatively, there are no exceptions to the exhaustion requirement); *United States v. Zywotko*, No. 2:19-cr-113-FtM-60NPM, 2020 WL 1492900, at *1-2 (M.D. Fla. Mar. 27, 2020) (denying request for compassionate release based on COVID-19 pandemic because defendant failed to exhaust administrative remedies). *But see United States v. Zukerman*, No. 16 Cr. 194 (AT), 2020 WL 1659880, at *2-6 (S.D.N.Y. Apr. 3, 2020) (granting request for compassionate release based on COVID-19 pandemic and waiving exhaustion requirement based on Second Circuit precedent).[3]

---

[3] Defendant argues that the Court can waive his exhaustion requirement based on *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019), a case upon which several district courts in other jurisdictions have waived the FSA's exhaustion requirement for compassionate release motions. The Court does not find those cases persuasive because *Washington* concerned a judge-made exhaustion requirement to the Controlled Substances Act, which, though not "expressly mandate[d]" by the statute's text, was created as a "prudential rule of judicial administration" that was "consistent with congressional intent." *Id.* at 115-16. In other words, *Washington* "speaks only to exhaustion requirements implied by a statute's structure and purpose, not to requirements that are expressly provided for in the statute itself." *United States v. Ogarro*, No. 18-CR-373-9 (RJS), 2020 WL 1876300, at *4 (S.D.N.Y. Apr. 14, 2020). As discussed above, the FSA contains an explicit and unambiguous statutory exhaustion requirement that is not subject to judicially created exceptions. The Court believes the decisions holding otherwise "are inconsistent with the text of § 3581(c)(1)(A) and the Supreme Court's *Ross* decision." *Epstein*, 2020 WL 1808616, at *4 n.4.

The Court has reviewed the authorities cited by Defendant and concludes that he has not established that the Court has the power to ignore the administrative exhaustion requirement. The Court acknowledges the danger posed by the COVID-19 pandemic, but the Court is nonetheless constrained by the existing statutory authority and cannot waive the FSA's exhaustion requirement. Based on the present record, the Court cannot find that Defendant has exhausted his administrative remedies within the BOP before filing the instant motion. Consequently, the Court lacks the authority to grant relief under the FSA. Defendant's motion for compassionate release should be denied without prejudice to its refiling in the future, along with evidence that he has fully exhausted his administrative remedies within the BOP. *See United States v. Mendoza*, No. CR103131DWFFLN, 2019 WL 6324870, at *4 (D. Minn. Nov. 26, 2019).

### B. Home Confinement

Defendant asks the Court to grant him a compassionate release to home confinement, which the Court will construe as alternatively seeking placement on home confinement.[4]

Home confinement allows a selected prisoner to serve a portion of his or her prison sentence at home, subject to certain restrictions. *See* 18 U.S.C. 3624(g)(2)(A) (outlining the requirements of home confinement). "The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community."

---

[4] Some federal courts have concluded that emergency petitions for release to home confinement, based on COVID-19, are properly construed as habeas requests pursuant to 28 U.S.C. § 2241. *See United States v. Brady*, No. 3:20-CV-623, 2020 WL 1865486, at *3 (M.D. Pa. Apr. 14, 2020) (collecting cases). To the extent that Defendant's request could be construed as seeking section 2241 habeas relief, it must be denied because a petitioner may only seek section 2241 relief in the federal judicial district in which he is incarcerated. *Matheny v. Morrison*, 307 F.3d 709, 711 (8th Cir. 2002). Defendant is incarcerated in FMC Fort Worth, which is not located within the Western District of Arkansas. Thus, the Court lacks jurisdiction over any section 2241 habeas claims that he is asserting. If Defendant wishes to seek section 2241 habeas relief, he must do so in the federal judicial district in which he is incarcerated.

18 U.S.C. § 3624(c)(1). This authority "may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2).

The home-confinement framework has recently been expanded twice. Section 602 of the FSA amended 18 U.S.C. § 3624(c)(2) by providing that "[t]he Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." *United States v. Gonzalez-Meza*, No. CR 14-114 (01) (MJD), 2020 WL 1876223, at *2 (D. Minn. Apr. 15, 2020). Then on March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") "to address the spread of the coronavirus in prisons by permitting BOP to expand the use of home confinement under [section 602 of the First Step Act and] § 3624(c)(2)." *Cordaro v. Finley*, No. 3:10-CR-75, 2020 WL 2084960, at *6 (M.D. Pa. Apr. 30, 2020). "Upon direction of the Attorney General, Section 12003(b)(2) of the CARES Act temporarily suspends the limitation of home confinement to the shorter of 10 percent of the inmate's sentence or 6 months." *Id.* Thus, "if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, as he did on April 3, 2020, the BOP Director may increase the maximum amount of time that a prisoner may spend in home confinement." *Id.*

The Court lacks the authority to grant Defendant his request of home confinement. A court may not modify a term of imprisonment once it has been imposed except when expressly permitted by statute or by Federal Rule of Criminal Procedure 35. 18 U.S.C. § 3582(c). Nothing in section 3624, the FSA, or the CARES Act gives the Court the authority to order a prisoner's placement on home confinement. *United States v. Coker*, No. 3:14-CR-085, 2020 WL 1877800, at *2 (E.D. Tenn. Apr. 15, 2020); *United States v. Kluge*, No. CR 17-61 (DWF), 2020 WL 209287, at *3 (D.

8

Minn. Jan. 14, 2020). Rather, the BOP has exclusive authority to determine where a prisoner is housed, which includes home confinement. 18 U.S.C. §§ 3624(c)(4), 3621(b); *see also United States v. Norris*, No. 7:17-CR-40-FL-1, 2019 WL 5079759, at *1 (E.D.N.C. Oct. 10, 2019) (collecting cases). Because the BOP has the sole authority to determine home-confinement placement, the Court cannot place Defendant on home confinement or otherwise order the BOP to do so. To the extent that Defendant seeks to be released to home confinement, he must make that request to the BOP.[5] If the BOP denies a home confinement request, the Court cannot review or reverse that decision.[6] *See* 18 U.S.C. § 3621(b) (stating that the BOP's "designation of a place of imprisonment . . . is not reviewable by any court").

### III. CONCLUSION

For the above-discussed reasons, the Court finds that Defendant's motion (ECF No. 342) should be and is hereby **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**, this 16th day of June, 2020.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge

---

[5] The Court shares Defendant's concerns about the effect of COVID-19. However, those concerns are not being ignored by the BOP or the Court. Section 12003(b)(2) of CARES Act "expand[s] the cohort of inmates who can be considered for home release." Pursuant to that provision of the CARES Act, on April 3, 2020, United States Attorney General William Barr issued a memorandum instructing the BOP to maximize transfer to home confinement for "all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and similarly situated BOP facilities where COVID-19 is materially affecting operations." *See* Memorandum from Attorney General William Barr to Director of Bureau of Prisons, *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (April 3, 2020), available at https://www.justice.gov/file/1266661/download (last visited June 15, 2020). The Court's ruling here should not be construed to reflect negatively on Defendant's eligibility for home confinement or on the conditions of any such placement.

[6] The initial remedy to challenge a denial of home confinement "is by administrative action within the BOP." *United States v. Williams*, No. CR 2:12-539, 2020 WL 1940836, at *2 (S.D. Tex. Apr. 22, 2020). "The proper vehicle to thereafter challenge the BOP's administrative decisions is a petition pursuant to 28 U.S.C. § 2241." *Id.*